UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>DAURICE KEVIN SCHOEFIELD,<br><br>Defendant. | 4:24-CR-40143-RAL<br><br><br>OPINION AND ORDER GRANTING MOTION TO DISMISS SUPERSEDING INDICTMENT |

Defendant Daurice Kevin Schoefield moved to dismiss his charge under the Armed Career Criminals Act (ACCA), contending that one of the three necessary predicate convictions for a "violent felony" does not fit the criteria under 18 U.S.C. § 924(e). Doc. 54. The motion implicates what the United States Court of Appeals for the Eighth Circuit has called the "topsy-turvy world" of the categorical and modified categorical approach. United States v. Lung'aho, 72 F.4th 845, 849 (8th Cir. 2023). Whether the predicate state court conviction qualifies as a "violent felony" is particularly dizzying because the *mens rea* for the state offense falls into an area left gray in jurisprudence of the Supreme Court of the United States and because the state considers the offense a general intent crime despite requiring proof of conduct manifesting "extreme indifference to the value of human life." Reasonable minds no doubt can differ on the proper result here, and this Court reaches a different result than what the magistrate judge recommended.

The United States initially indicted Schoefield for possession of a firearm by a prohibited person, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8), under which he would face a 15-year

1

maximum sentence. Doc. 1. The United States now proceeds with a superseding indictment, charging Schoefield for violations of 18 U.S.C. §§ 922(g)(1) and 924(e)(1) of the ACCA, Doc. 27, where, if convicted, Schoefield will face a mandatory minimum term of imprisonment of 15 years, see 18 U.S.C. § 924(e)(1). Under the ACCA, the United States must show that Schoefield has been convicted of three violent felonies before he violated 18 U.S.C. § 922(g). See id. Schoefield moved to dismiss the superseding indictment and argues that one predicate state conviction of aggravated assault (extreme indifference)[1] in violation of SDCL § 22-18-1.1(1) does not qualify as a "violent felony" under the ACCA. Doc. 54.

The magistrate judge issued a report and recommendation that this Court deny the motion to dismiss and deem the state statute at issue to qualify as a "violent felony" under the ACCA based on the modified categorical approach. Doc. 63. Schoefield has objected. Doc. 64. Having considered this difficult and close legal issue de novo, this Court grants the motion to dismiss and declines to adopt the report and recommendation.

## I.    Legal Standard

### A. Report and Recommendation

This Court's review of a magistrate judge's report and recommendation is governed by 28 U.S.C. § 636(b)(1). When a party objects to a magistrate judge's report and recommendation, a district court judge must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The

---

[1] The Supreme Court of South Dakota has referred to conviction under SDCL 22-18-1.1(1) as "aggravated assault (extreme indifference)" to distinguish subpart (1) from other means of committing aggravated assault. See State v. Wolf, 941 N.W.2d 216, 219 (S.D. 2020).

district court judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Id.

### B. Motion to Dismiss under Federal Rule of Criminal Procedure 12(b)(3)(B)(v)

Schoefield argues that the superseding indictment fails to state an offense and therefore must be dismissed under Federal Rule of Criminal Procedure 12(b)(3)(B)(v). Doc. 54. "A party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). However, under Rule 12(b)(3)(B)(v), a defendant "must" challenge an indictment for failing to state an offense before trial. "An indictment survives a motion to dismiss for failure to state an offense if the indictment contains a facially sufficient allegation." United States v. Sholley-Gonzalez, 996 F.3d 887, 893 (8th Cir. 2021) (cleaned up and citation omitted). "An indictment is legally sufficient on its face if it contains all of the essential elements of the offense charged, fairly informs the defendant of the charges against which he must defend, and alleges sufficient information to allow a defendant to plead a conviction or acquittal as a bar to a subsequent prosecution." United States v. Steffen, 687 F.3d 1104, 1109 (8th Cir. 2012) (citation omitted). This is a low bar, and an indictment normally will be found valid unless it is "so defective" that no reasonable construction of it properly charges the offense for which the defendant is being tried. United States v. Sewell, 513 F.3d 820, 821 (8th Cir. 2008) (citation omitted). Normally, an indictment that tracks the statutory language is sufficient. Id. When ruling on a motion to dismiss, a court must accept all factual allegations in the indictment as true. See United States v. Hansmeier, 988 F.3d 428, 436 (8th Cir. 2021).

The superseding indictment charges that Schoefield knowingly possessed a firearm having been convicted of three violent felonies in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1). Section 924(e) states that:

3

> In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined under this title and imprisoned not less than fifteen years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under section 922(g).

18 U.S.C. § 924(e)(1).  The section further defines "violent felony" as

> any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that--
> **(i)** has as an element the use, attempted use, or threatened use of physical force against the person of another; or
> **(ii)** is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another.*

Id. § 924 (e)(2)(B) (emphasis added).  The Supreme Court declared the language in italics above,

known as the "residual clause," unconstitutionally vague in Johnson v. United States, 576 U.S.

591, 595–602 (2015).

> The superseding indictment charges:

> On or about November 4, 2024, in the District of South Dakota, the defendant, Daurice Kevin Schoefield, having been convicted of three violent crimes each punishable by imprisonment for a term exceeding one year, and those three violent crimes having been committed on occasions different from one another, and then knowing he had been convicted of three violent crimes, each punishable by a term exceeding one year, knowingly possessed a firearm, to wit; an Israel Weapon Industries, model Jericho 941, 9mm black semi automatic handgun, bearing serial number J0010715 and 4 9mm rounds of ammunition, which had been shipped and transported in interstate and foreign commerce, all in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1).

Doc. 27.  The wording of the superseding indictment tracks the elements of the possession of a

firearm by a prohibited person charge and the ACCA sentencing enhancement.  The superseding

indictment charges Schoefield with violating § 922(g)(1) for knowingly possessing a firearm

4

having been convicted of a felony and with having been convicted of three prior violent felonies. On its face, the superseding indictment is valid.

A valid indictment ordinarily will survive a motion to dismiss for failure to state an offense without further inquiry. "An indictment should be tested solely on the basis of the allegations made on its face," and no evidence outside the four corners of the indictment should be considered. United States v. Hall, 20 F.3d 1084, 1087 (10th Cir. 1994). In a criminal proceeding based on a grand jury indictment, there is no further procedure to test the sufficiency of the evidence before trial. United States v. Ferro, 252 F.3d 964, 968 (8th Cir. 2001). A court cannot dismiss an indictment based on "predictions as to what the trial evidence will be;" instead it must give the United States the opportunity to present its evidence. Id. (citation omitted). But "[i]f a question of law is involved, then consideration of the motion [to dismiss indictment] is generally proper." United States v. Fontenot, 665 F.3d 640, 644 (5th Cir. 2011) (citation omitted).

Here, Schoefield's motion presents a legal rather than a factual issue and thus is appropriate to be decided before trial. Both parties agree on what the three underlying felonies are, and Schoefield contests one of these—his 2019 conviction for aggravated assault (extreme indifference) in violation of SDCL § 22-18-1.1(1)—as not being a "violent felony" allowing for the ACCA sentencing enhancement. Doc. 55 at 2; Doc. 59 at 4; Doc. 63 at 4 ("The government does not dispute Mr. Schoefield's representation of the basis for its prosecution under the ACCA."). Schoefield argues that aggravated assault (extreme indifference) does not meet the ACCA's force/elements clause, 18 U.S.C. § 924(e)(2)(B)(i), because, he argues, a person could be convicted of aggravated assault (extreme indifference) with a mental state of ordinary recklessness, and an offense with a *mens rea* of recklessness fails to qualify as a crime of violence. Doc. 64 at 3. Schoefield is not disputing that his other two convictions, including a South Dakota aggravated

assault (choking) conviction in violation of SDCL § 22-18-1.1(8) and a Minnesota third degree assault (substantial bodily harm) conviction, qualify as "violent felonies" under the ACCA. See Doc. 55 at 1–2. Therefore, the focus of this Opinion and Order is the third predicate conviction for aggravated assault (extreme indifference).

## II.    Analysis

### A. The ACCA and the Modified Categorical Approach

The ACCA applies only where the defendant has three qualifying predicate violent felonies. See 18 U.S.C. § 924(e)(1). The term "violent felony" is defined in subsection (e)(2)(B), with the first subpart known as the "elements" or (more commonly in the Eighth Circuit)[2] "force" clause and the second subpart known as the "enumerated offenses" clause. See Borden, 593 U.S. at 424 (Kagan, J., plurality); United States v. Schneider, 905 F.3d 1088, 1090 (8th Cir. 2018). Aggravated assault is not among the offenses listed in the enumerated offenses clause, and the parties agree that Schoefield's conviction will only qualify as a "violent felony" if it fits under the force clause. See Docs. 55, 59. Whether to grant Schoefield's motion depends on if Schoefield's 2019 conviction for aggravated assault (extreme indifference) satisfies the ACCA's force clause.

"An offense qualifies as a violent felony under [the force] clause if it 'has as an element the use, attempted use, or threatened use of physical force against the person of another.'" Borden, 593 U.S. at 424 (Kagan, J., plurality) (quoting 18 U.S.C. § 924(e)(2)(B)(i)).[3] The Supreme Court

---

[2] The Eighth Circuit has used "force clause" in several recent cases. United States v. Hayden, 179 F.4th 1165, 1167 (8th Cir. 2026) (per curiam); Janis v. United States, 73 F.4th 628, 629 (8th Cir. 2023); Lung'aho, 72 F.4th at 849; United States v. Bragg, 44 F.4th 1067, 1075 (8th Cir. 2022); McCoy v. United States, 960 F.3d 487, 489 (8th Cir. 2020).

[3] Because "[t]he Sentencing Guidelines'[] definition of 'crime of violence' is so similar to the ACCA's definition of 'violent felony' . . . we generally consider cases interpreting them interchangeably." United States v. Bragg, 44 F.4th 1067, 1075 (8th Cir. 2022) (quoting United States v. Martin, 15 F.4th 878, 883 (8th Cir. 2021). This Court's analysis relies on both categories of cases.

has adopted the "categorical approach" to determine if an underlying offense qualifies under the force clause, making "the facts of a given case irrelevant." Id. Rather, a court must determine "whether the elements of the statute of conviction meet the federal standard." Id.; McCoy, 960 F.3d at 489. However, "[i]f the state statute is 'divisible,' meaning that it 'list[s] elements in the alternative, and thereby defines multiple crimes,' we apply a modified categorical approach that examines a limited universe of judicial records 'to determine what crime, with what elements, a defendant was convicted of.'" United States v. Hataway, 933 F.3d 940, 943 (8th Cir. 2019) (quoting Mathis v. United States, 579 U.S. 500, 505–06 (2016)).

### B. South Dakota's Aggravated Assault (Extreme Indifference) Offense

The relevant South Dakota statute of aggravated assault lists five possible crimes, so the modified categorical approach applies, which both parties recognize. See SDCL § 22-18-1.1(1) (2019)[4]; Doc. 63 at 6. The state court records submitted by the parties make clear that Schoefield was convicted of violating SDCL § 22-18-1.1(1), the subsection of aggravated assault under South Dakota law that relates to extreme indifference to human life. See Doc. 62-2 (Judgment and Sentence). Under the modified categorical approach, if this narrower offense satisfies the force clause, then Schoefield's 2019 aggravated assault (extreme indifference) conviction will qualify as a violent predicate felony under the ACCA. See Hataway, 933 F.3d at 945 ("Applying the modified categorical approach, the Court held that Castleman pleaded guilty to the relevant federal

---

[4] Schoefield's conviction was from 2019, so this Court refers to the version of the statute in effect at that time. However, the wording of SDCL § 22-18-1.1, including subpart (1), has been amended as of July 1, 2026. Compare SDCL § 22-18-1.1(1) (2019) ("Any person who: (1) Attempts to cause serious bodily injury to another, or causes such injury, under circumstances manifesting extreme indifference to the value of human life . . . is guilty of aggravated assault."), with SDCL § 22-18-1.1(1) (2026) (No person may: (1) Cause or attempt to cause serious bodily injury to another under circumstances manifesting extreme indifference to the value of human life; . . . A person who violates this section is guilty of aggravated assault.").

crime of violence '[b]ecause Castleman's indictment makes clear that the use of physical force was an element of his conviction.'" (quoting United States v. Castleman, 572 U.S. 157, 171 (2014)).

Under SDCL § 22-18-1.1(1), a person is guilty of aggravated assault (extreme indifference) when he or she "[a]ttempts to cause serious bodily injury to another, or causes such injury, under circumstances manifesting extreme indifference to the value of human life." The Supreme Court of South Dakota has interpreted this subsection of the statute as requiring the State to prove: "(1) the person either attempted to cause or actually did cause serious bodily injury to another, and (2) the circumstances under which the act was done manifested extreme indifference to the value of human life." State v. Wolf, 941 N.W.2d 216, 220 (S.D. 2020) (quoting State v. White Mountain, 477 N.W.2d 36, 39 (S.D. 1991) (quoting State v. Rash, 294 N.W.2d 416, 418 (S.D. 1980))). The Supreme Court of South Dakota "ha[s] sustained a finding of guilt under SDCL 22-18-1.1(1) when the accused's conduct was of the most threatening sort, such that the circumstances demonstrate a blatant disregard for the risk to the victim's life, and the accused either attempted to or did cause serious bodily injury." State v. Peneaux, 988 N.W.2d 263, 270 (S.D. 2023) (cleaned up and citations omitted); see also id. at 270–71 (reviewing underlying factual bases for aggravated assault (extreme indifference) convictions). Thus, the elements of the South Dakota crime of aggravated assault (extreme indifference) on first blush seem to satisfy the force clause requirement of necessarily involving defendant's "use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i). But the analysis is not so simple under Supreme Court precedent.

8

### C. Requisite *Mens Rea* for a Conviction for a Violent Felony Under ACCA

"After <u>Borden v. United States</u>, a crime of violence," as defined by the force clause, "requires a mens rea greater than recklessness—e.g., knowledge or intent." <u>United States v. Lopez-Castillo</u>, 24 F.4th 1216, 1219 n.2 (8th Cir. 2022); <u>see also</u> <u>United States v. Frazier</u>, 48 F.4th 884, 886 (8th Cir. 2022) ("The upshot of <u>Borden</u> is that a crime committed with a *mens rea* of recklessness does not involve 'the use, attempted use, or threatened use of physical force against the person of another.'" (quoting 18 U.S.C. § 924(e)(2)(B)(i))). In <u>Borden,</u> the Supreme Court held that an offense with a *mens rea* of recklessness fails to qualify as a crime of violence under the force clause because the word "against" "introduce[es] the conscious object (not the mere recipient) of the force," and therefore, a person convicted of recklessly causing an injury "does not come within the elements clause" because he or she "has not used force 'against' another person in the targeted way that clause requires." 593 U.S. at 430–32; <u>see also</u> <u>id.</u> at 445–46 (Thomas, J., concurring).

The <u>Borden</u> plurality set out the four states of mind in modern law, noting that purpose and knowledge involve the sort of conscious desire to injure another to be a "violent felony" under the ACCA, but recklessness and negligence do not. <u>Id.</u> at 425–26. The <u>Borden</u> plurality foresaw the gray area in which an offense like aggravated assault (extreme indifference) would fit. In a footnote, the plurality decision in <u>Borden</u> noted, "Some states recognize mental states (often called 'depraved heart' or 'extreme recklessness') between recklessness and knowledge," but it concluded that it "ha[d] no occasion to address whether offenses with those mental states fall within the elements clause." <u>Id.</u> at 429 n.4. "<u>Borden</u> merely answers the question, 'reserved in . .

. Leocal' that 'the elements clause exclude[s] reckless conduct.'" United States v. Williams, 80 F.4th 85, 94 (1st Cir. 2023) (quoting Borden, 593 U.S. at 437 n.6).

The Eighth Circuit has applied Borden to exclude convictions that could be based on recklessness from the force clause's definition of violent felony. For example, when analyzing a previous conviction of the Texas aggravated assault statute under the ACCA force clause, the Eighth Circuit concluded, "Given that Texas's version of aggravated assault criminalizes 'recklessly caus[ing] bodily injury,' there is no question that [the defendant's] crime does not count as a violent felony under Borden." United States v. Hoxworth, 11 F.4th 693, 696 (8th Cir. 2021) (citing Tex. Penal Code Ann. §§ 22.01(a)(1), .02(a)(2); Godsey v. State, 719 S.W.2d 578, 584 (Tex. Crim. App. 1986) (en banc) (treating the three mental states listed in the statute as different means of satisfying one element of a single crime, rather than alternative elements in three separate crimes)). The Eighth Circuit highlighted that "[e]veryone agrees that the Texas law in question defines a single, indivisible offense that can be committed under *any* of three mental states— intentionally, knowingly, or recklessly," and therefore, "even if [the defendant] himself did not commit the offense recklessly, others can, meaning the crime *cannot* 'ha[ve] as an *element* the use, attempted use, or threatened use of physical force against the person of another.'" Id. (citing Tex. Penal Code Ann. §§ 22.01(a)(1), .02(a)(2); Godsey, 719 S.W.2d at 584; Borden, 593 U.S. at 444– 45 (plurality opinion), 446–47 (Thomas, J., concurring in the judgment); and quoting 18 U.S.C. § 924(e)(2)(B)(i) (emphasis added)).

The Eighth Circuit recently applied Borden to find that a state arson statute that required as an element a mens rea of "malice" did not qualify as a crime of violence because "[a]lthough malice involves a higher level of risk than recklessness, the two share a common trait: neither requires actors to 'consciously direct[]' their acts towards a specific person or property."

10

Lung'aho, 72 F.4th at 850 (quoting Borden, 593 U.S. at 426–27, 430–33 (plurality opinion) (explaining that the word "against" incorporates "an intent requirement")). The Eighth Circuit explained,

> [t]o sum up, the differences between recklessness, malice, and knowledge come down to a sliding scale of probabilities. From "substantial and unjustified" (recklessness), to a "likelihood" (malice), to "practical certainty" (knowledge), each requires more risk and culpability than the last. In many cases, there may be "little difference" between these mental states. But little does not mean none, especially in the topsy-turvy world of the categorical approach.

Id. at 849 (quoting Borden, 593 U.S. at 441 (plurality opinion); United States v. Sweet, 985 F.2d 443, 445 (8th Cir. 1993); United States v. Bailey, 444 U.S. 394, 404 (1980); United States v. Whaley, 552 F.3d 904, 907 (8th Cir. 2009)). The Eighth Circuit then compared "malice" with "depraved heart" and "extreme recklessness," and noted that "[s]tate-of-mind requirements like 'depraved heart[,] . . . extreme recklessness,' and malice require the government to prove that the defendant has ignored a 'likelihood' of harm," before ultimately concluding that malice does not satisfy the force clause. Id. at 849–50 (quoting Whaley, 552 F.3d at 907). As the opinion explained, "[a] conscious decision to ignore a risk of harm is different from intending it," and "[a]lthough malice involves a higher level of risk than recklessness, the two share a common trait: neither requires actors to 'consciously direct[]' their acts towards a specific person or property." Id. at 850 (quoting Borden, 141 S. Ct. at 1823–24, 1826–27 (plurality opinion) (explaining that the word "against" incorporates "an intent requirement")).

Before Borden,[5] the Eighth Circuit had distinguished ordinary recklessness from extreme-indifference recklessness in an enumerated clause analysis when reviewing the least culpable

---

[5] Before Borden, the Eighth Circuit would at times evaluate whether some form of reckless driving (plainly not a violent crime) could result in a conviction under a state statute. For instance, in United States v. Schneider, 905 F.3d 1088 (8th Cir. 2018), the Eighth Circuit held that the defendant's prior North Dakota conviction for aggravated assault could not qualify as a crime of

mental state for aggravated assault, which is defined by the Model Penal Code (MPC) as "reckless[ness] under circumstances manifesting extreme difference to the value of a human life," as "[t]he law often punishes those who harm someone out of an extreme indifference to human life as though they intended to harm the victim." Schneider, 905 F.3d at 1094 (quoting Model Penal Code § 211.1(2)(a)). Also before Borden, in United States v. Boose, 739 F.3d 1185 (8th Cir. 2014), the Eighth Circuit "held that Arkansas first-degree battery could be committed with a mental state of ordinary recklessness, despite an additional statutory requirement that a defendant manifest 'extreme indifference to the value of human life,'" and therefore was not a qualifying crime of violence under the force clause of the Guidelines after reviewing relevant state court decisions interpreting the statute. Janis, 73 F.4th at 634 (quoting Boose, 739 F.3d at 1188); see also Boose, 739 F.3d at 1187–88 (citing Hoyle v. State, 268 S.W.3d 313, 318–19 (Ark. 2007) (upholding first degree battery conviction where defendant acted "recklessly" and exhibited "reckless conduct")). As the court explained, "[w]hile it remains true a conviction for first-degree battery under § 5–13–201(a)(3) requires a defendant manifest 'extreme indifference to the value of human life,' Arkansas law establishes the first-degree battery statute can be violated with a mental state of recklessness," and therefore, " a conviction for battery in the first degree under § 5–13–201(a)(3) is not a qualifying crime of violence under the force clause of U.S.S.G. § 4B1.2(a)(1)." Id. at 1188.

---

violence under the force clause (or the enumerated clause) because the relevant subsection required a mens rea of "willfully," which was defined in North Dakota law "as acting 'intentionally, knowingly, or *recklessly*.'"  905 F.3d at 1091–92 (citing N.D. Cent. Code. Ann. § 12.1-02-02(1)(e)). Therefore, the subsection covered reckless driving, which the Eighth Circuit had held does not require physical force, and "[a] statute that criminalizes reckless driving cannot satisfy the force clause." Id. at 1092.

12

After Borden, the Eighth Circuit has determined second-degree murder and voluntary manslaughter convictions to be violent felonies, reasoning that these underlying convictions require more than ordinary recklessness, such as depraved heart recklessness or extreme recklessness. Brewer v. United States, 89 F.4th 1091, 1093 (8th Cir. 2024) (citing Janis, 73 F.4th at 632–33 (concluding "a *mens rea* of 'depraved heart' or 'extreme recklessness' is sufficient to establish a use of force against the person of another")). The Eighth Circuit in Brewer observed that "[o]ther circuits likewise have concluded that a *mens rea* of depraved heart or extreme recklessness is sufficient to establish a use of force against another." Id. (collecting cases). To harmonize the distinctions made across post-Borden Eighth Circuit cases, in Brewer, the Eighth Circuit distinguished Lung'aho from Janis and Brewer and noted that "on a 'sliding scale of probabilities,' this court's decisions place extreme recklessness and offenses like murder and voluntary manslaughter further along the culpability spectrum than 'willful disregard of a likelihood of harm' and the offense of arson." Brewer, 89 F.4th at 1093–94 (citations omitted)).

The Eighth Circuit has not addressed whether aggravated assault (extreme indifference) under SDCL § 22-18-1.1(1) is a violent felony. The closest the Eighth Circuit has come is in a pre-Borden decision, Schneider. When analyzing the North Dakota statute for aggravated assault under the Guidelines' enumerated clause,[6] the Eighth Circuit listed South Dakota's aggravated assault (extreme indifference) statute subsection as an example of a state law that "define[s] extreme-indifference recklessness as the minimum mental state for aggravated assault." Schneider, 905 F.3d at 1096, 1096 n.6 (listing SDCL § 22-18-1.1(1)). See also United States v. Brasby, 61 F.4th 127, 140 (3d Cir. 2023) ("Of those 24 jurisdictions [with a felony labeled

---

[6] The enumerated clause of the relevant Guidelines section lists aggravated assault as a "crime of violence," but the parallel ACCA enumerated clause does not. Compare U.S.S.G. § 4B1.2(a)(2), with 18 U.S.C. § 924(e)(1)(B)(ii).

aggravated assault], we conclude that 14 punish causing serious bodily injury (or the virtually identical 'serious physical injury,' 'great bodily injury,' or serious physical harm') with a *mens rea* of extreme indifference recklessness or less." (citing SDCL § 22-18-1.1(1) as one of the twenty-four jurisdictions with an aggravated assault felony and as one of the fourteen with a *mens rea* of extreme indifference recklessness or less)).

### D. Least Culpable *Mens Rea* to Convict for Aggravated Assault (Extreme Indifference)

Borden did not alter that state law determines the elements of the state crime and what the necessary state of mind is. Borden, 593 U.S. at 424–25. After all, "[w]hen the highest court of a state disposes of an issue of state law contrary to the resolution of the issue theretofore suggested by a federal court, the latter ruling must give way." Myers v. Casino Queen, Inc., 689 F.3d 904, 909 (8th Cir. 2012) (quoting Beckon, Inc. v. AMCO Ins., 616 F.3d 812, 820 (8th Cir. 2010)). See also Mullaney v. Wilbur, 421 U.S. 684, 691 (1975); Jackson v. Virginia, 443 U.S. 307, 324 n.16 (1979) (recognizing that states have the power to define the substantive elements of criminal offenses).

As stated above, the elements of aggravated assault (extreme indifference) under SDCL § 22-18-1.1(1) require "(1) the person either attempted to cause or actually did cause serious bodily injury to another, and (2) the circumstances under which the act was done manifested extreme indifference to the value of human life." Wolf, 941 N.W.2d at 220. This second element—conduct manifesting "extreme indifference to the value of human life"—resembles the *mens rea* requirements found by the Eighth Circuit to be insufficient under the force clause. Lung'aho, 72 F.4th at 848–49 (holding "maliciously" requirement in arson offense sets state of mind requiring intentionality or willful disregard of a likelihood of harm, which is too close to recklessness to satisfy force clause); Boose, 739 F.3d at 1188 (concluding "extreme indifference to the value of

14

human life" as element of first-degree battery does not qualify it as a "violent felony" because it does not foreclose conviction on recklessness). But a similar element of "depraved heart" or "extreme recklessness" in <u>Janis</u>, 73 F.4th at 632–33, and "depraved heart recklessness" in <u>Brewer</u>, 89 F.4th at 1092–94, sufficed for second degree murder and voluntary manslaughter convictions to be violent felonies. In short, the elements of aggravated assault (extreme indifference) place the South Dakota offense in a gray area not only left undecided in <u>Borden</u>, but in subsequent Eighth Circuit cases.

The Supreme Court of South Dakota has discussed the *mens rea* applicable to aggravated assault (extreme indifference). In <u>Rash</u>, the defendant challenged his conviction for aggravated assault (extreme difference) under SDCL § 22-18-1.1(1) by arguing that the trial court should have given his requested jury instruction on specific intent. <u>Rash</u>, 294 N.W.2d at 417–18. The Supreme Court of South Dakota rejected this argument, writing "that the legislature intended for the statute to cover all acts," and "[t]he legislature left out all three words ('purposely,' 'knowingly,' and 'recklessly'), thereby encompassing *all situations* involving circumstances manifesting extreme indifference to the value of human life, *regardless of the intent* of the person committing the assault." <u>Id.</u> at 418 (emphasis added). The court concluded, "by leaving out 'purposely and knowingly,' [the state legislature] meant to make the statute one of general intent," which it defined as one that "encompass[es] those crimes which can be committed either 'recklessly' or 'negligently.'" <u>Id.</u> at 417–18 (quoting <u>People v. Lerma</u>, 239 N.W.2d 424, 425–26 (Mich. 1976)).

The Supreme Court of South Dakota has cited <u>Rash</u> when interpreting the aggravated assault (extreme indifference) subsection, including in the 2020 case <u>Wolf</u>. 941 N.W.2d at 220 (listing elements and quoting <u>Rash</u>, 294 N.W.2d at 418). In <u>Wolf</u>, the court clarified the State's burden of proof for the second element: "The severity of the resulting injuries and the accused's

15

state of mind may be germane to the extreme indifference question, but the main focus is on the *conduct* of the accused." Id. at 221 (quoting State v. Miland, 858 N.W.2d 328, 332 (S.D. 2014)).

"While South Dakota has adopted the MPC's mens rea levels, the common law distinction of specific intent versus general intent is still a part of [its] jurisprudence," which is codified at SDCL 22-1-2(1)(b)–(c) (listing the statutory definitions for intent and knowledge). State v. Liaw, 878 N.W.2d 97, 100 (S.D. 2016) (citing State v. Schouten, 707 N.W.2d 820, 824 (S.D. 2005)). The Supreme Court of South Dakota has defined "[s]pecific intent . . . as meaning some intent in addition to the physical act which the crime requires, while general intent means an intent to do the physical act—or, perhaps, recklessly doing the physical act—which the crime requires." Schouten, 707 N.W.2d at 824 (quoting State v. Taecker, 661 N.W.2d 712, 718 (S.D. 2003)).[7] In 2016, the court repeated the specific–general intent distinction it had drawn in Rash: "Specific intent crimes would be limited only to those crimes which are required to be committed either purposefully or knowingly, while general intent crimes would encompass those crimes which can be committed either recklessly or negligently." Liaw, 878 N.W.2d at 101 (quoting Rash, 294 N.W.2d at 417).

These various holdings provide the basis for South Dakota's criminal pattern jury instructions. For specific intent, the instruction reads: "In the crime of ____, there must exist in

---

[7] See also State v. St. John, 675 N.W.2d 426, 428 (S.D. 2004) (per curiam) (holding aggravated assault under SDCL 22–18–1.1(3) defines a general intent crime despite statutory language making an attempt an element of the offense); Taecker, 661 N.W.2d at 718 (holding "intentionally omits" within SDCL 25–7–16 does not designate an additional mental state beyond that accompanying the act); State v. Heftel, 513 N.W.2d 397, 400 (S.D. 1994) (holding the term "intentionally merely designates that the culpability required is something more than negligence or recklessness"); State v. Barrientos, 444 N.W.2d 374, 376 (S.D. 1989) (per curiam) (holding "knowingly causes" in aggravated assault statute requires no mental state beyond the "knowledge" which must accompany the act of causing the bodily injury and declining to find "intent to cause bodily injury" as an element).

16

the mind of the perpetrator the specific intent to ____. If specific intent did not exist, this crime has not been committed." SDPJI (Crim.) 1-12-2 (citing in part Rash, 294 N.W.2d 416).[8] For general intent, the instruction reads:

> In the crime of ____ the defendant must have criminal intent. To constitute criminal intent it is not necessary that there should exist an intent to violate the law. When a person intentionally does an act which the law declares to be a crime, the person is acting with criminal intent, even though the person may not know that the conduct is unlawful.

SDPJI (Crim.) 1-12-1 (citing in part Rash, 294 N.W.2d 416). The instruction on simple assault includes multiple possible *mens reas* including recklessly, negligently, and intentionally, but the aggravated assault (extreme indifference) pattern jury instructions lack any *mens rea* element. Contrast SDPJI (Crim.) 3-23-1, with SDPJI (Crim.) 3-23-3 ("Any person who [attempts to cause serious bodily injury to another, or causes such injury, under circumstances manifesting extreme indifference to the value of human life] . . . is guilty of a crime."), and SPDJI (Crim.) 3-23-4 ("1. The defendant [attempted to cause] [caused] serious bodily injury to ____ (name of alleged victim). 2. The defendant acted under circumstances manifesting extreme indifference to the value of human life."). In short, as recognized in Rash, aggravated assault (extreme indifference) encompasses "all situations involving circumstances manifesting extreme indifference to the value of human life, regardless of the intent of the person committing the assault." Rash, 294 N.W.2d at 418. It is a general intent crime. Id.

---

[8] This Court has deemed crimes with specific intent requirements to be violent crimes. United States v. Quigley, No. 3:23-CR-30022-RAL, 2023 WL 9005850, at *4 (D.S.D. Nov. 14, 2023) (concluding state statute at issue was a violent crime because "[t]he South Dakota Supreme Court has repeatedly stated that first-degree burglary is a specific intent crime[, and] [w]hat's more, the state pattern jury instructions call for the giving of a specific intent instruction when a defendant is charged with this kind of burglary") (collecting cases), report and recommendation adopted, No. 3:23-CR-30022-RAL, 2023 WL 9002763 (D.S.D. Dec. 28, 2023).

### E. Showing of a Realistic Probability of Reckless Mens Rea

However, as noted by the magistrate judge, this Court's analysis does not stop there. Eighth Circuit precedent has required a "realistic probability" that the challenged predicate offense could be committed recklessly, which

> requires more than the application of legal imagination to a state statute's language. It requires a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime. To show that realistic probability, an offender, of course, may show that the statute was so applied in his own case. But he must at least point to his own case or other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues.

Bragg, 44 F.4th at 1076 (quoting Gonzales v. Duenas-Alvarez, 549 U.S. 183, 193 (2007)); see also United States v. Pulley, 75 F.4th 929, 932 (8th Cir. 2023) ("There is neither a precedential case nor a realistic situation in which vehicular hijacking would not be considered a crime of violence as it 'has as an element the use, attempted use, or threatened use of physical force against the person of another . . . .'") (quoting U.S.S.G. § 4B1.2(a)(1)). In Duenas-Alvarez, which dealt with the Immigration and Nationality Act, not the ACCA, the individual challenging the use of his prior state-court conviction in his deportation proceedings "argued [that] state courts had interpreted the offense broadly to reach aiding and abetting conduct that fell 'beyond generic theft,'" and "[t]o test this assertion, the Court looked to state decisional law and asked whether a 'realistic probability' existed that the State 'would apply its statute to conduct that falls outside' the federal generic definition." United States v. Taylor, 596 U.S. 845, 858 (2022) (quoting Duenas-Alvarez, 549 U.S. at 190–91, 193). "Appreciating the respect due state courts as the final arbiters of state law in our federal system, this Court reasoned that it made sense to consult how a state court would interpret its own State's laws." Id. at 859. Following a review of the underlying state cases,

however, the Court found that the respondent had not made the necessary showing. Duenas-Alvarez, 549 U.S. at 191–94.

In both Bragg and United States v. Quigley, 943 F.3d 390 (8th Cir. 2019), the Eighth Circuit applied Duenas-Alvarez to determine if a conviction satisfied the force clause of the ACCA and the force clause of U.S.S.G. § 4B1.2(a)(1) respectively. The Eighth Circuit in both cases observed that neither the defendant nor the panel had identified any state cases where the defendant was convicted of the underlying predicate state offense "without having at least threatened to use physical force." Bragg, 44 F.4th at 1076 (quoting Quigley, 943 F.3d at 394).

The magistrate judge dutifully surveyed the fact patterns of convictions for aggravated assault (extreme indifference) from South Dakota case law. See Doc. 63 at 15–19 (reviewing cases). This survey failed to identify a case where mere recklessness resulted in a conviction for aggravated assault (extreme indifference). See id.[9]

However, under Bragg, "[t]o show that realistic probability, an offender . . . may show that the statute was so applied in his own case . . . in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues." 44 F.4th at 1076. The conduct leading to Schoefield's conviction (following a "no contest" plea) leaves ambiguity on whether he may have been acting recklessly. Neither party objected to the portion of the magistrate judge's report and recommendation setting forth the facts underlying Schoefield's conviction, which are:

At the hearing the prosecutor stated the factual basis for the pleas:

_____

[9] One early aggravated assault (extreme indifference) case, State v. Shear, 295 N.W.2d 176 (S.D. 1980), where a man injured his wife when he shoved her aside to get to another man he mistakenly thought to be her lover, was modified to a simple assault conviction as the evidence did not support circumstances manifesting extreme indifference to the value of human life and remanded for resentencing. 295 N.W.2d at 177–78. However, two of the five justices dissented as to the reversal on the extreme indifference to human life finding. See id. at 178 (Dunn, J. dissenting).

19

> On October 17, 2017, at about 11 p.m. a call came in to the Lincoln County Sheriff's Department from an individual who reported their friend had been sexually assaulted. Deputies were dispatched to [an address] in the city of Harrisburg for that report. When they arrived there, they met with the victim who reported that she knew Daurice Schoefield and that he had appeared at her apartment that afternoon, and that when he was at her apartment, he had performed an act of oral sex upon her and then took her into the bedroom and entered into sexual intercourse with her. She reported that she did not want that act to take place, and further that she did not consent to that act.[10]
>
> Law enforcement made contact with Mr. Schoefield who voluntarily came to the sheriff's office early that next morning, I believe it would have been. He was interviewed by deputies and gave a similar account that the victim gave and with the exception that he reported to law enforcement that he believed those acts between himself and the victim were consensual.
>
> He was eventually arrested for the charge of rape in the second degree and upon booking, he was found to be in possession of the actual drug cocaine on his person. . . And additionally he did also test positive for—a sample did test positive for the presence of methamphetamine.

Defense counsel was asked if he wished to add anything to the prosecutor's statement of the factual basis for the plea, but he declined.

At sentencing, defense counsel added the additional factual context that Mr. Schoefield and the assault victim had known each other for quite some time, and both were co-workers at a gas station convenience store. The prosecutor added the facts that the victim immediately underwent a medical examination following her report of rape and that exam revealed Mr. Schoefield's sperm in the victim's vaginal area. In addition, the prosecutor stated the victim had injuries to her wrists that were noted during the medical examination; those injuries consisted of bruising which she stated had happened during the assault.

Doc. 63 at 12–13 (quoting Doc. 62-3 at 11–12, then citing Doc. 62-3 at 13, then citing Doc. 62-4 at 4–5, 8) (formatting adjusted).

In short, Schoefield and the victim knew each other socially and worked together before the incident. It is unclear from the record whether part or all of the sexual contact was

---

[10] It is unclear whether "that act" meant sexual intercourse only or both the act of oral sex and intercourse.

nonconsensual, and Schoefield claimed that the sex was consensual. The victim's bruised wrists and timely report of a rape undermine Schoefield's claim. Given his positive drug test, Schofield may have been under the influence at the time of the crime. Depending on how and from whose perspective these events are viewed, there exists a "realistic probability" under Bragg that Schoefield's *mens rea* may have been reckless, yet his conduct would manifest extreme indifference to human life.

Regardless of the details of Schoefield's conviction, the Supreme Court of South Dakota has repeatedly relied on its holding in Rash, that there is no *mens rea* element for aggravated assault (extreme indifference), making a conviction possible on the sort of reckless behavior that Borden deemed insufficient to support a violent felony. Under the modified categorical approach, a conviction for aggravated assault (extreme indifference) as a general intent crime could be based on reckless conduct and is not invariably a crime of violence under the ACCA's force clause.

## III.    Conclusion

Reasonable minds can differ on this question as demonstrated by the analysis in the Report and Recommendation and in this Opinion and Order. Granting the motion to dismiss the superseding indictment does not end the case, however. "It is well established, at least in this circuit, that '[a]n original indictment remains pending prior to trial, even after the filing of a superseding indictment, unless the original indictment is formally dismissed.'" United States v. Rupp, 994 F.3d 946, 949 (8th Cir. 2021) (quoting United States v. Yielding, 657 F.3d 688, 703 (8th Cir. 2011) (citing Rule 48)); see also United States v. Walker, 363 F.3d 711, 715 (8th Cir. 2004) ("the district court correctly held that the superseding indictment and the original indictment can co-exist," citing cases from other circuits). Schoefield's motion to dismiss only seeks to

21

dismiss the superseding indictment, which added the ACCA charge. Doc. 54. The original indictment, Doc. 1, has not been formally dismissed and remains pending.

For the reasons explained, it is

ORDERED that the Defendant's Motion to Dismiss, Doc. 54, is granted, and this Court declines to adopt the Report and Recommendation, Doc. 63. It is further

ORDERED that the Superseding Indictment, Doc. 27, is dismissed.

DATED this 3 rd day of August, 2026.

BY THE COURT:

ROBERTO A. LANGE
CHIEF JUDGE